IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Nov 16, 2010

| | |
|---|---|
| IN RE: <br><br> RONALD D. MORRISON and SHARON K. MORRISON, <br><br> Debtors. | Case No. 09-13928-M <br> Chapter 7 |
| PATRICK J. MALLOY, III, TRUSTEE, <br><br> Plaintiff, <br><br> v. <br><br> RONALD D. MORRISON and SHARON K. MORRISON, <br><br> Defendants. | Adv. No. 10-01056-M |

## MEMORANDUM OPINION

A spendthrift trust exists in order to protect people from themselves. When a trustor establishes a spendthrift trust, he or she is saying to the beneficiary, "I want you to have this source of income, but I don't trust you. If I let you manage this money, it will disappear." What, then, are we to make of a trust that contains spendthrift provisions yet allows the beneficiary access to its corpus upon demand? The question is important in this case, as the fate of over $87,000 hangs in the balance. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b).[1] Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (E).

## Findings of Fact

At issue are the terms and provisions of "The Bob D. Rosencutter Living Trust" dated August 9, 2002, as amended March 29, 2004 (the "Trust"). Bob D. Rosencutter ("Rosencutter") was the father of Sharon K. Morrison, one of the defendants herein ("Sharon"). At some time prior to December 15, 2009, Rosencutter died. Sharon is a named beneficiary of the Trust.

The Trust contains a provision entitled "Distribution of Share for Sharon K. Morrison" that reads as follows:

> Sharon K Morrison may withdraw from her share at any time or times any portion or all of the accumulated trust income and principal.
>
> Sharon K Morrison may exercise this right by delivering written notice to the Trustee, describing the property or portion desired to be withdrawn. Upon receipt of such notice, the Trustee shall convey and deliver to Sharon K Morrison, free of trust, the property described in such notice. This right of withdrawal shall be a privilege that may be exercised only by Sharon K Morrison and shall not be subject to the claims of any creditor or to legal process and may not be voluntarily or involuntarily alienated or encumbered. This provision shall not limit the exercise of any power of appointment Sharon K Morrison may have.[2]

Sharon and her husband, Ronald D. Morrison, filed an original petition for relief under Chapter 7 of the United States Bankruptcy Code on December 15, 2009. Patrick J. Malloy III ("Malloy" or

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (West 2010).

[2] *Stipulation of Facts*, *Docket No. 11*, ¶ 5.

"Trustee") is the duly appointed trustee in the case. As of the date these proceedings were commenced, the monies attributable to Sharon's interest in the Trust totaled $87,434.12 (the "Trust Funds"). By agreement of the parties, these monies have been turned over to the Trustee pending the outcome of this adversary proceeding.

Malloy filed this adversary proceeding against Sharon and Ronald D. Morrison ("Debtors") on May 4, 2010, claiming the Trust Funds as property of the estate. Debtors have answered, claiming that the spendthrift provisions contained in the Trust remove the Trust Funds from the bankruptcy estate, thus placing them outside of the Trustee's grasp.

### Conclusions of Law

The question before the Court is whether the Trust Funds constitute property of the Debtors' bankruptcy estate. Property of the estate is defined in § 541 to include, with certain exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case."[3] One of those exceptions is found in § 541(c)(2), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."[4] This section refers to what are commonly known as "spendthrift trusts." The purpose of a spendthrift trust is to prevent the beneficiary from dissipating his or her interest in the trust, either voluntarily (through a pledge of the interest in the trust) or involuntarily (through a creditor's execution upon the beneficiary's interest in order to satisfy a judgment). Courts have uniformly held under this section "that a debtor's interest in a valid

---

[3] § 541(a)(1).

[4] § 541(c)(2).

spendthrift trust is not to be included as property of his bankruptcy estate."[5]  Most spendthrift trusts have at least one thing in common:  the beneficiary has no right to or control over the corpus of the trust.

At common law, when a beneficiary has the right to obtain the corpus of the trust upon demand, the trust is not a valid spendthrift trust.

> Sec. 153(2) of the Restatement (Second) of Trusts recites:
>
> > If the beneficiary is entitled to have the principal conveyed to him immediately, a restraint on the voluntary or involuntary transfer of his interest in the principal is invalid.
>
> This language is precise. It means that, where a beneficiary is entitled to immediate payment of principal upon demand, a restraint on a transfer of principal-whether such transfer is voluntary or involuntary-invalidates the entire spendthrift provision. The Restatement (Second) of Trust's comment on Sec. 153(2) explains:
>
> > C. *Where a beneficiary entitled to immediate payment of the principal.* If a beneficiary is entitled to have the principal paid or conveyed to him immediately or at any time he may call for it, a restraint on alienation of his interest is invalid.
>
> This comment on Sec. 153(2) by using the words "restraint on alienation" makes it clear that, where a beneficiary is entitled to immediate payment of principal, a restraint on a voluntary transfer, a restraint on an involuntary transfer, and a restraint on both a voluntary and involuntary transfer are all invalid.[6]

If the common law rule governs this case, Malloy wins.

Debtors do not take issue with this statement of the common law.  Instead, they argue that

---

[5] *In re Leimer*, 54 B.R. 587, 590 (D. Neb. 1985) (and cases cited therein).  *See also In re Moses*, 167 F.3d 470, 473 (9th Cir. 1999); *In re Walker*, 139 B.R. 31, 32 (N.D. Okla. 1990); *In re Kim*, 257 B.R. 680, 688 (9th Cir. BAP 2000); *Avery Fed. Savs. & Loan Assn. v. Klayer (In re Klayer)*, 20 B.R. 270, 272 (Bankr. W.D. Ky. 1981).

[6] *Mann v. Mitchell (In re Mitchell)*, 423 B.R. 758, 764 (Bankr. E.D. Wisc. 2009) (quoting the Restatement (Second) of Trusts).  *See also In re Orkin*, 170 B.R. 751 (Bankr. D. Mass. 1994); *In re Herzig*, 167 B.R. 707  (Bankr. D. Mass. 1994).

it has no application in Oklahoma, having been superceded by the following statute:

> A. Any instrument creating a trust may provide by specific words that the interest of any beneficiary in the income of the trust shall not be subject to voluntary or involuntary alienation by such beneficiary. Subject to the following provisions of this section, a direction to this effect shall be valid and enforceable.
>
> * * *
>
> E. The right of any beneficiary of a trust to receive the principal of the trust or any part of it, presently or in the future, shall not be alienable and shall not be subject to the claims of his creditors.[7]

Research has uncovered only one Oklahoma case dealing with this provision. In *Williams v. Threet (In re Threet)*,[8] the chapter 7 trustee filed an adversary proceeding against the debtors, seeking to recover as property of the estate the debtor's interest in his retirement plan. The funds at issue represented voluntary contributions made by said debtor into the plan. On a motion for summary judgment, the bankruptcy court determined that the funds were property of the estate, and ordered their turnover to the trustee. As it did so, the bankruptcy court (at least implicitly) rejected the notion that § 175.25 prohibited such a result:

> On the date of bankruptcy, the Debtor had an unconditional contractual right to obtain the funds in his retirement plan with Atlantic Richfield Company. This is a legal right which clearly becomes part of the Debtor's estate. It is also clear that the Trustee has the same right in the property as the Debtor had and since the Debtor could demand payment on the date of bankruptcy, the Trustee can now demand the same payment. In the Silldorff case the court held that since the debtor was still employed at the time of bankruptcy the trustee had no greater rights than the debtor and could not demand payment until the debtor ceased his employment. The court stated as follows:
>
>> In a number of cases, courts have found that, where the debtor was not entitled to a present distribution at the time of the petition, the

---

[7] Okla. Stat. Ann. tit. 60, § 175.25(A) and (E) (West 2010) (hereafter "§ 175.25").

[8] 118 B.R. 805 (Bankr. N.D. Okla. 1990).

5

> bankruptcy Trustee was not entitled to one either. *See, In re Huff,* 61 B.R. 678, 684-85 (N.D. Ill. 1986); *In re Loe,* 83 B.R. 641 (Bankr. D. Minn. 1988), and *In re DeWeese,* 47 B.R. 251 (Bankr. W.D.N.C. 1985). If a debtor does not possess an asset or a present right to demand, merely filing a petition for bankruptcy cannot create it. The Court agrees that the Trustee is only entitled to the property or assets which the Debtors could demand.

The Plan Administrator argues that § 541(c)(2) is applicable in the present case and its provisions prevent the Debtor's interest in the plan from being part of the estate. Said provision is as follows:

> A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

This Court holds that this section does not apply to the facts of the present case. At the time of bankruptcy, creditors could not levy upon the Debtor's interest in the retirement plan and to that extent there was a restriction on any involuntary transfer of the Debtor's beneficial interest in the plan. However, as indicated above, the Debtor had a complete right to obtain the funds and, therefore, there was no restriction on his ability to voluntarily transfer his interest in the fund.

Also the overwhelming majority of cases including all of those cited above hold that § 541(c)(2) only applies where the beneficial interest of the debtor in a retirement plan can be found to be an interest in a spendthrift trust. It is obvious that on the date of bankruptcy the Debtor's interest in the pension plan was not an interest in a spendthrift trust because he had the absolute right to obtain the fund. This right to obtain the funds is a complete antithesis to a spendthrift trust.[9]

It is arguable that this portion of *Threet* is dicta, as the court also found the funds to be property of the bankruptcy estate on the basis that the monies at issue were contributed by one of the debtors, and that Oklahoma law prohibits the formation of a self-settled spendthrift trust.[10] *Threet* is an example of one court rejecting the notion that § 175.25 creates a spendthrift trust when the

---

[9] *Id.* at 808 (quoting *Christison v. Slane (In re Silldorf)*, 96 B.R. 859, 866 (C.D. Ill. 1989)).

[10] *Id.*

beneficiary has the absolute right to immediate possession of the trust corpus.

In the present case, many of the terms of the Trust pay lip service to the notion of a spendthrift trust. However, while Sharon has no right to encumber or alienate the Trust Funds so long as they remain in the Trust, she has an unfettered right to have them distributed to her at any time upon demand. That right became property of the estate under § 541(a)(1). As property of the estate, the Trust Funds are subject to Malloy's dominion and control.

Debtors rely upon the case of *Greening Donald Co. LTD v. Oklahoma Wire Rope Products, Inc.*[11] (*"Greening"*) to support their position that Sharon's unfettered access to the Trust Funds does not render those funds "alienable" for purposes of § 175.25. Such reliance is misplaced. *Greening* dealt with an individual retirement account ("IRA"), not a spendthrift trust.[12] Moreover, the court in *Greening* found that none of the terms of the IRA provided a means of alienation of any of the funds contained therein; instead, the only way that the beneficiary of the IRA could remove funds was by **terminating or revoking** the IRA, an act that the court did not equate with the ability to alienate funds.[13] Furthermore, the court in *Greening* expressly found that the IRA did not qualify as a spendthrift trust, and was thus outside the province of § 175.25.[14]

## Conclusion

The Trust Funds are property of this bankruptcy estate. Malloy is entitled to those funds in his capacity as trustee. A separate judgment in accordance with this Memorandum Opinion is

---

[11] 766 P.2d 970 (Okla. 1988).

[12] The IRA met the requirements for protection against alienation set forth in Okla. Stat. Ann. tit. 60, §§ 326, 327 and 328 (West 2010).

[13] *Greening*, 766 P.2d at 973.

[14] *Id.*

entered concurrently herewith.

   Dated this 16th day of November, 2010.

           BY THE COURT:

           TERRENCE L. MICHAEL, CHIEF JUDGE
           UNITED STATES BANKRUPTCY COURT

5988.5